In re The MARRIAGE OF Susan B. MacBETH, Petitioner-Respondent,

v.

**William H. MacBETH, Defendant-Appellant.**

Nos. 43110, 43323.

Missouri Court of Appeals, Eastern District, Division Three.

July 14, 1981.

Susan M. Hais, Clayton, for defendant-appellant.

Frank Susman, Susman, Schermer, Rimmerl & Parker, St. Louis, for petitioner-respondent.

SNYDER, Judge.

This is an appeal by the husband from a judgment which dissolved the marriage of the parties, divided their property, and awarded attorney fees to the wife. The trial court also ruled that the award of the parties' residence to the wife "shall be considered in part an award of marital property and in part an award of maintenance in gross."

The husband's single subdivided allegation of error can be summarized partly as challenging the division of marital property and the award of attorney fees because they are unsupported by substantial evidence and against the weight of the evidence. In addition, he asserts the trial court erred in declaring or applying the law because: (1) it failed to determine what was marital property and to set aside the separate property of the parties; and (2) it awarded the parties' residence to the wife in part as marital property and in part as maintenance in gross.

The judgment is affirmed in part, reversed in part and the cause remanded.

Susan Brauer Greiling was a widow with two children and William H. MacBeth was a widower with three children. They were married August 3, 1975. The trial court found that at the time of the marriage the husband owned a home (Sandalwood) worth $40,500 and had liquid assets of approxi-

mately $98,000, a total of $138,500; and that the wife had $20,000 in securities, $73,000 cash and other liquid assets and a home (Surrey) worth $22,000, a total of $115,000.

After their marriage the parties and their five children lived in the husband's home on Sandalwood for less than two weeks and at the wife's home on Surrey for approximately six months before selling Surrey and Sandalwood and purchasing a residence (Hollins) in January 1976. The trial court found that $60,000 (78%) of the $77,000 purchase price of Hollins came from the wife's bank funds and $17,000 (22%) came from the husband's.

The trial court further found that the wife "had net assets of approximately $81,000 including her $60,000 interest in the Hollins property" at the conclusion of the evidentiary portion of the trial on April 21, 1980 and that she had spent during the marriage $34,000 of assets and approximately $39,000 of social security and veterans' administration benefits. The husband on April 21, 1980 had net assets of approximately $53,000 and had spent during the marriage "approximately $25,000 in net earned income, and miscellaneous sums of Social Security payments, dividends and interest."

There were problems in the marriage almost from the beginning but the parties stayed together until June 1978. The wife spent the summer of 1978 in Wisconsin with all five children, against the husband's wishes and without any financial support from the husband, who remained in St. Louis at the Hollins home. After a brief reconciliation, the parties separated in October 1978. During the period of separation before the trial, the husband and his children occupied the Hollins home, rent and mortgage free. Additional facts will be stated as necessary to the understanding of the issues raised.

The point raised concerning substantial supporting evidence and the weight of the evidence will not be considered because the case must be reversed and remanded on other grounds, and the evidentiary shortcomings, if any, should not recur upon retrial.

█ The husband is correct in his contention the trial court erred by failing to determine what was marital property and to set aside the separate property of each party, particularly a $50,000 revocable trust which was established by the wife.[1]

In February of 1976, the husband and wife placed approximately $50,000 in a revocable trust. The husband and five children were initially beneficiaries but the wife removed the husband from the trust in August 1978. The record does not reveal whether the husband's children were also removed. The trust instrument was not offered in evidence. The sources of the trust fund were proceeds of insurance on the life of her first husband (approximately $9,000), the proceeds from the sale of the home on Surrey ($21,229.29) and approximately $20,000 in stock owned by the wife prior to her second marriage. The $9,000 insurance money and the $21,229.29 from Surrey were transferred after the marriage from an account in the wife's name alone to an account in the names of both parties as joint owners. The joint account money was then transferred by the parties to the trust.

The trial court made no specific findings of fact on the status of the trust as marital or separate property; nor did the court set it aside as separate property or divide the trust assets. In fact, the trust was not mentioned by name in the trial court's findings of fact and conclusions of law.[2]

1. Appellant also contends that the trial court failed to consider $45,000 which the husband alleges was an asset of the wife. The trial court found that this money was inherited by the wife's sons from their late father's uncle. The husband has not provided the reviewing court with the exhibit upon which his contrary claim is based and evidence in the record supports the finding of the trial court. The money

is not an asset of the wife, even though she may be named as guardian in the accounts, but is the property of her sons and need not be considered by the trial court as property available for the support of the wife.

2. The wife testified that $20,000 in stock which was her separate property had gone into the trust in 1976. The trial judge found that at the

In addition, the husband testified he had $2,800 to $3,000 in an AVF and Prentiss-Field underwriter's account. The account contained undrawn commissions the husband had earned from the sale of insurance policies, primarily on the lives of his wife and the children. This asset was neither set aside as separate property of the husband nor named in the trial court's division of marital property.

█ If the trial court had failed to dispose of the trust and the undrawn commission this court would have no jurisdiction and would be required to dismiss the appeal. *State ex rel. McClintock v. Black*, 608 S.W.2d 405, 406[1] (Mo. banc 1980). However, the trial judge awarded all personal property, with the exception of specified appliances, to the party then in possession. This serves as an award of the assets of the revocable trust, which were under the control of respondent though not in her physical possession and the uncollected earnings of the husband which were under his control. Thus the appellate court has jurisdiction to review the judgment. *See Wansing v. Wansing*, 612 S.W.2d 55, 56[2] (Mo.App. 1981).

█ Section 452.330, RSMo 1978 requires the trial court to set aside to each spouse his separate property and to divide the marital property justly after considering all relevant factors. *In re Marriage of Schulz*, 583 S.W.2d 735, 741–742[3–6] (Mo.App. 1979).

█ It is not clear from the trial court's conclusions of law what property awarded was set aside as separate property of the husband or the wife and what was divided as marital property. The trial court in its judgment disposes of all property, with the exception of its award of the Hollins house, by designating the party to whom it shall belong without indicating whether the party to whom it

is awarded retains the asset as his separate property or as an award of marital property. Because of this deficiency in the judgment it is impossible to determine on appeal whether the court made a just division of the marital property in accordance with § 452.330, RSMo 1978 and the cause must be remanded for further proceedings. *In re Marriage of Schulz, supra*, 744[12].

█ A court cannot make a just division under § 452.330, RSMo 1978 without an antecedent identification of the marital property. *Hopkins v. Hopkins*, 597 S.W.2d 702, 709[6] (Mo.App.1980); *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 274[6] (Mo. App.1979).

█ It was also error to award the Hollins residence to the wife as partly marital property and partly maintenance in gross without specifying the amounts awarded as marital property and maintenance in gross.

The trial court did not set a value on the Hollins property except to say it was purchased on January 5, 1976 for an approximate price of $77,000. Nor did the court specify a dollar amount or a percentage of value (if the purchase price in fact was the value of the Hollins property at the time of the trial) as the amount of the maintenance in gross award. This court is unable to review the judgment because the awards were not separated. Given the record before it this court cannot say with assurance that the wife is entitled to all of the value of the Hollins property, either as maintenance in gross or as marital property, or both. *In re Marriage of Schulz, supra*, 744. *See C L R v. L B R*, 555 S.W.2d 372, 375[2] (Mo.App.1977). Until this point has been clarified by the trial court, a discussion of the merits of awarding or declining to award maintenance to the wife in this case would be premature. *See Freeman v. Freeman*, 586 S.W.2d 386 (Mo.App.1979).

---

end of trial she had approximately $81,000 "including her $60,000 interest in the Hollins property." In the absence of a clearer record this court declines to speculate whether the other $21,000 was the stock placed in trust. If it was, however, the trial court should not have placed it in the same category as her interest in

the Hollins property since the latter was clearly marital property. The stock was the separate property of the wife to be set aside. The source of funds used to purchase the Hollins property was but a factor to be considered in dividing it.

The award of attorney fees to the wife must also be reconsidered because upon retrial changes may be made in the division of marital property and the award of maintenance in gross, changes which may affect the trial court's decision on the award of attorney fees.

It is with reluctance that this case is sent back to the trial court. The parties have gone through enough during the first trial. They were required to testify about additional assets and facts which are not discussed in this opinion. The financial and property division aspects of the case were very complicated and difficult to present in the traditional question and answer format. As a result, the evidence presented on the value of some of the assets was less than complete.

■ In addition to determining child custody, child support and spousal maintenance Missouri courts are now required to settle all of the property rights of the parties whose marriages are being dissolved. § 452.330, RSMo 1978. *Anspach v. Anspach*, 557 S.W.2d 3, 5[1, 2] (Mo.App.1977). Perhaps an accounting upon the trial court's own order or upon court order by stipulation of the parties would result in judicial efficiency, and even more important, a more equitable settlement for all parties. *See* Rule 68.01. Living expenses of the parties and of children, if any, contributions and earnings of the respective parties, sales and purchases, transfers of property and tracing of assets and other factors must be considered. In such cases, an accounting, although expensive, may ultimately result in less total expense and a quicker resolution of the dispute.

That part of the judgment dissolving the marriage of the parties is affirmed. The remainder of the judgment is reversed and the cause remanded for retrial.

CRIST, P.J., and REINHARD, J., concur.